UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO: 7:12-CV-00052-BR

| | |
|---|---|
| WILLIAM B. FLOWERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| WELLS FARGO ADVISORS, LLC, ) | |
| STEPHEN MCKENZIE, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' motion to dismiss and plaintiff's motion to remand. The motions have been fully briefed and are ripe for disposition.

## I. BACKGROUND

In February 2012, plaintiff initiated this action in state court against his former employer, Wells Fargo Advisors, LLC ("Wells Fargo"); Stephen McKenzie, a Senior Vice President and Regional Sales Manager for Wells Fargo; and the National Association of Securities Dealers'("NASD") successor, Financial Industry Regulatory Authority, Inc. ("FINRA"). In his verified complaint, plaintiff alleges state law claims arising out of Wells Fargo's filing of a claim in arbitration with FINRA against plaintiff and based on the circumstances surrounding its prior employment of plaintiff. Plaintiff seeks monetary damages in addition to declaratory and injunctive relief. In March 2012, FINRA removed the action to this court. (See DE # 1.)

Upon plaintiff's motion and after a hearing, the court declined to preliminarily enjoin Wells Fargo from retaining a Virginia-based law firm to prosecute the FINRA arbitration against plaintiff and declined to stay that arbitration. (See DE # 30, at 7-11.) Also, over plaintiff's

arguments to the contrary, the court found that it possesses federal question jurisdiction over plaintiff's second claim for relief and supplemental jurisdiction over plaintiff's remaining state law claims under 28 U.S.C. § 1367. (Id. at 3-7.)

After this ruling, Wells Fargo and McKenzie filed the instant motion to dismiss. They argue that plaintiff's first and second claims for relief have now been mooted by the conclusion of the FINRA arbitration and that, at any rate, such claims fail to state claims upon which relief can be granted. Additionally, they contend that plaintiff's remaining claims should be dismissed because they were in fact arbitrated before FINRA.

After defendants' filing of the motion to dismiss, plaintiff voluntarily dismissed FINRA from this action and filed the instant motion to remand. Plaintiff asserts that because FINRA is no longer a party to this action, his remaining claims, that is, the claims against Wells Fargo and McKenzie, present no substantial question of federal law, and therefore, the court lacks subject matter jurisdiction.

## II. DISCUSSION

As an initial matter, the court finds that federal question jurisdiction over plaintiff's second claim for relief remains, despite plaintiff's dismissal of FINRA as a party. With his second claim for relief, plaintiff alleges

> that (1) the arbitration provision contained in the Form U4 [1] he

---

[1] As this court has noted:
> "Pursuant to § 15A of the Exchange Act, FINRA enacted Membership Rule IM–1000–1 governing Forms U–4, which is used to screen applicants for registration as securities professionals and to ensure that their applications and registration materials are accurate and up-to-date." "FINRA has required any person who works in the investment banking or securities business of a FINRA member to register as a securities representative (e.g., a stockbroker) or principal, among other categories. To register, applicants must complete a Form

(continued...)

2

> signed is unconscionable and unenforceable; (2) "the rules
> promulgated by FINRA for arbitration are unconscionable;" and
> (3) "to the extent that FINRA's actions are deemed
> quasi-governmental, [its rules] violate the due process rights of
> Plaintiff as provided by the North Carolina and the U.S.
> Constitutions."

(3/27/12 Order, DE # 33, at 5 (citing Compl., DE # 1-2, ¶ 30).)

The court's analysis of the issue of subject matter jurisdiction over this claim was not dependent upon FINRA's being a party. Rather, what the court found significant was plaintiff's attack on FINRA's Form U4 and its arbitration rules, namely, that they are so grossly unfair to a financial advisor, such as plaintiff, that the arbitration provision in the Form U4 should not be enforced. That attack implicates a significant government interest– regulation of the securities industry and rules approved by a federal regulatory agency (i.e., the United States Securities and Exchange Commission ("SEC")). Accordingly, the court concluded that plaintiff's right to relief necessarily depends on a question of federal law. FINRA's presence or absence in the lawsuit does not alter this conclusion, and the court will not reconsider it.

Turning to defendants' arguments in support of dismissal of plaintiff's claims, the court first considers the viability of the second claim for relief. Defendants initially argue that this claim is moot because the arbitration proceeding, which plaintiff sought to enjoin, has now

---

[1](...continued)
U–4 . . . ." The Form U4 plaintiff executed contains the following provision:
> I agree to arbitrate any dispute, claim or controversy that may
> arise between me and my firm, or a customer, or any other
> person, that is required to be arbitrated under the rules,
> constitutions, or by-laws of the SROs [self-regulatory
> organizations, such as FINRA] indicated in Section 4 (SRO
> REGISTRATION) as may be amended from time to time and
> that any arbitration award rendered against me may be entered
> as a judgment in any court of competent jurisdiction.

(DE # 30, at 2-3 n.3 (citations omitted).)

concluded. Plaintiff concedes, and the court agrees, that to the extent his second claim requests injunctive relief, the claim is moot. (Resp., DE # 33, at 5-6.)

However, plaintiff also seeks a declaratory judgment on this claim. "Specifically, Plaintiff seeks a declaration that the FINRA dispute resolution process, as it is currently defined, is replete with such one-sidedness, partiality, and lack of procedural safeguards, that any contractual provision purporting to require the submission of Plaintiff's claims to FINRA arbitration is unenforceable in this state under public policy-related grounds or otherwise pursuant to North Carolina law." (Id. at 6; see also Compl., DE # 1-2, ¶ 30.) Defendants do not appear to contend that completion of arbitration has rendered this claim for declaratory relief moot. (See Mem., DE # 28, at 4; Reply, DE # 34, at 2.) Instead, defendants argue that pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiff has failed to state a claim upon which relief can be granted. (Mem., DE # 28, at 7-8; Reply, DE # 34, at 2-5.) "A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted).

North Carolina public policy favors arbitration. Crossman v. Life Care Ctrs. of Am., Inc., No. COA12-702, ___ S.E.2d ___, 2013 WL 149857, at *3 (N.C. Ct. App. Jan. 15, 2013). "That policy is subject, however, to '[t]he essential thrust of the Federal Arbitration Act, which is in accord with the law of our [S]tate, . . . to require the application of contract law to determine whether a particular arbitration agreement is enforceable[,] thereby placing arbitration agreements upon the same footing as other contracts.'" Id. (citations omitted) (alterations in original). "As with any contract . . ., 'equity may require invalidation of an arbitration

4

agreement that is unconscionable.'" Tillman v. Commercial Credit Loans, Inc., 655 S.E.2d 362, 369 (N.C. 2008) (quoting Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002)). "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Id. at 370 (citations omitted). "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power. Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." Id. (citations omitted).

To the extent plaintiff contends that the Form U4's arbitration provision is unconscionable and unenforceable, the court finds that he has failed to state a claim. Courts rountinely reject such a claim. See, e.g., Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999) ("Form U-4 binds *both* parties to mandatory arbitration and may not be said to favor the stronger party unreasonably." (emphasis in original)); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 17 (1st Cir. 1999) (rejecting plaintiff's argument that the Form U4 is an unconscionable contract of adhesion even though plaintiff was required to sign the Form as a condition of employment in the securities industry and could not excise the arbitration clause from the Form); Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361, 366-68 (7th Cir. 1999) (employer's requiring plaintiff to register with several securities exchanges by signing the Form U4 and thereby binding her to mandatory arbitration does not make the arbitration clause unconscionable); Seus v. John Nuveen & Co., 146 F.3d 175, 184 (3d Cir. 1998) (concluding Form U4 agreement to arbitrate was valid and rejecting plaintiff's arguments of unequal bargaining power, oppression, and unconscionability). And, the court disagrees with plaintiff's argument that the FINRA rules pertaining to discovery and the

5

selection of arbitrators make the arbitration agreement so one-sided as to be unconscionable. See Simmons v. Morgan Stanley Smith Barney, LLC, 872 F. Supp. 2d 1002, 1017-18 (S.D. Cal. 2012) (finding plaintiff had failed to show that arbitration provisions in promissory notes and bonus agreements are substantively unconscionable because FINRA rules limit discovery); Richert v. Nat'l Arbitration Forum, LLC, Civil No. 09-763 ADM/JJK, 2009 WL 3297565, at *5, 13 (D. Minn. Oct. 13, 2009) (adopting magistrate judge's conclusion that arbitration provision in plaintiff's employment agreement is not unconscionable where plaintiff asserted that "she has no way of knowing if an arbitrator selected through the [American Arbitration Association] is an arbitrator who also relies or would like to rely on Defendants[, plaintiff's former employers who incidentally ran a dispute resolution forum,] for his or her livelihood"); Millas v. Morgan Stanley & Co., Inc., No. 08-cv-0573-MJR, 2008 WL 5095917, at *5 (S.D. Ill. Dec. 1, 2008) (refusing to give credence to plaintiff's generic claims of bias in favor of the industry to invalidate arbitration provisions in employment agreement and Form U4 on ground of unconscionability); cf. Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938-39 (4th Cir. 1999) (finding employer had breached arbitration agreement and rescission was thus warranted based on employer's promulgation of biased arbitration rules, including "unrestricted control" over selection of the arbitration panel).

Furthermore, to the extent plaintiff alleges that the FINRA rules violate his due process rights, he has likewise failed to state a claim. See Desiderio, 191 F.3d at 206-07 (affirming trial court's dismissal of plaintiff's constitutional claims challenging the arbitration clause in the Form U4 because NASD is not a state actor nor can its actions be fairly attributable to the state); see also Jones v. S.E.C., 115 F.3d 1173, 1183 (4th Cir. 1997) (rejecting a stockbroker's challenge to SEC's imposition of sanctions against him, after NASD had already disciplined

6

him, on double jeopardy grounds, recognizing that NASD is a private corporation and, "[a]s such, it is highly questionable whether its discipline of members, even if considered to be a quasi-public corporation, can implicate the Double Jeopardy Clause").

Because plaintiff does not state a claim with his second claim for relief, it must be dismissed.[2] The court does not possess an independent basis for jurisdiction over plaintiff's remaining claims, all of which arise under state law. The court declines to exercise jurisdiction over plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) and will remand those claims.

### III. CONCLUSION

Defendant's motion to dismiss is ALLOWED IN PART and DENIED WITHOUT PREJUDICE IN PART. Plaintiff's second claim for relief is DISMISSED. As to plaintiff's remaining claims, plaintiff's motion to remand is ALLOWED, and this case is hereby REMANDED to the Superior Court for New Hanover County, North Carolina. The Clerk is

---

[2] Although in his second claim for relief plaintiff alleges that defendants engaged in wrongful conduct in inducing plaintiff to enter into employment with Wells Fargo and sign the Form U4, (see Compl., DE # 1-2, ¶ 33), the court does not consider this ground as a basis for invalidating the arbitration provision contained in the Form U4. The wrongful conduct about which plaintiff complains is McKenzie's misrepresentations about the geographical area in which plaintiff would work and the area's production figures. (See id. ¶¶ 9, 10, 14, 16, 17.) While these allegations are pertinent to plaintiff's claims of breach of his employment agreement, fraud, and unfair and deceptive trade practices, they do not pertain specifically to the arbitration provision in the Form U4 itself. Plaintiff does not allege that McKenzie made any misrepresentations about the arbitration provision. Accordingly, the allegedly wrongful conduct on the part of defendants is not a ground for declaring the arbitration provision unenforceable. See Sydnor v. Conseco Fin. Serv. Corp., 252 F.3d 302, 305 (4th Cir. 2001) ("Principles of equity may counsel for invalidation of an arbitration agreement if the grounds for revocation relate specifically to the arbitration clause." (citing Hooters, 173 F.3d at 938)).

7

DIRECTED to send a copy of this order to the Clerk of that court and to close this case.

This 30 January 2013.

_____
W. Earl Britt
Senior U.S. District Judge